UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEVIN CARTER, | : | CIVIL ACTION NO. |
| Petitioner, | : | 3:13-CV-00820 (JCH) |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | JULY 13, 2015 |

**RULING RE: MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 (Doc. No. 1)**

Petitioner Kevin Carter ("Carter") moves to vacate, set aside, or correct his sentence pursuant to section 2255 of title 28 of the United States Code. Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Mot. to Vac.") (Doc. No. 1). Carter argues that his sentence should be vacated because he received ineffective assistance of counsel, based on counsel's failure to challenge his offense level and restitution award at sentencing, as well as the inclusion of a prior conviction in calculating his criminal history. Carter also argues that the sentence imposed by the court was procedurally unreasonable based on a failure to give reasons on the record, and that counsel's failure to raise this issue rendered his assistance ineffective. Mot. to Vac. at 10. On July 11, 2013, Carter filed a motion to amend his petition to add a claim under Alleyne v. United States, 133 S.Ct. 2151 (2013), which was decided by the Supreme Court on June 17, 2013. Motion to Amend (Doc. No. 3) ("Mot. to Amend"). The government responded to Carter's claims in a Response filed on September 23, 2013. United States' Response (Doc. No. 6) ("Gov't's Resp.").

For the reasons set forth below, Carter's Motion (Doc. No. 1) is **DENIED.**

1

**I.     BACKGROUND**

In August 2004, a federal grand jury returned a Superseding Indictment charging Carter with one count of Hobbs Act Robbery (Count One) in violation of 18 U.S.C. § 1951, one count of using and carrying a firearm during and in relation to a crime of violence (Count Two) in violation of 18 U.S.C. § 924(c)(1)(A), and one count of possession of a firearm by a prohibited person (Count Three) in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e)(1).   United States v. Carter, No. 3:04-CR-00174-EBB, Superseding Indictment (Doc. No. 10).   Carter pled not guilty on all counts and went to trial.   On January 21, 2005, the jury returned a verdict of guilty on all counts.   Carter moved for acquittal under Rule 29 or for a new trial under Rule 33.   Id., Defendant's Motions for Judgment of Acquittal (Doc. No. 53).   The Motion was denied.   Id., Ruling (Doc. No. 62).

On April 15, 2005, the court sentenced Carter to 20 years on Count One, 7 years on Count Two, and 360 months on Count Three.   The sentence on Count One ran consecutive to the sentence on Count Two, and the sentence on Count Three ran concurrent to the sentence on Counts One and Two, for a total effective sentence of 360 months.   Id., Judgment (Doc No. 66).   The court also ordered restitution in the amount of $241,732.00.   At sentencing, the court determined that Carter qualified as a career offender under section 4B1.1 of the Guidelines, and that he was subject to sentence enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).   As a result, his guideline sentencing range was 360 months to life.   Carter appealed his conviction, but not his sentence.   The Second Circuit affirmed his conviction on March 27, 2006.   United States v. Carter, 173 F. App'x 79, 80 (2d Cir.

2006) (summary order).

On October 5, 2007, Carter filed a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255.  Carter v. United States, No. 3:07-CV-01477-EBB, Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. No. 1).  Carter argued that his counsel had been ineffective in failing to challenge his classifications as an armed career criminal and a career offender at his sentencing.  The court initially denied Carter's motion.  Id., Ruling and Order (July 14, 2008) (Doc. No. 22).  However, upon reconsideration, the court determined that Carter did not qualify as an armed career criminal or a career offender, and that his counsel's failure to object to those sentence enhancements constituted ineffective assistance of counsel and caused Carter actual prejudice.  Id., Ruling on Motion for Reconsideration (August 6, 2010) (Doc. No. 37).  Thus, the court granted Carter's Motion in part and ordered him to be resentenced.  Id.  An addendum to the pre-sentence report was prepared in connection with Carter's resentencing.

At Carter's resentencing on September 8, 2011, the court found an offense level of 22 and a criminal history category of VI, resulting in a guideline imprisonment range of 84-105 months.  The court amended Carter's judgment to a term of imprisonment of 105 months on Counts One and Three, to run concurrently, and 84 months on Count Two, to run consecutive to Counts One and Three, for a total effective sentence of 189 months.  United States v. Carter, No. 3:04-CR-00174-EBB, Amendment to Judgment (Doc. No. 109) ("Amd. Judg.").  In all other respects the original judgment dated May 2, 2005 remained the same.  Id.  Carter appealed the amended judgment of conviction, raising a variety of claims attacking both his conviction and his sentence.  On

3

December 26, 2012, the Second Circuit affirmed the District Court's judgment in a Summary Order.  United States v. Carter, 506 F. App'x 78, 80 (2d Cir. 2012) (summary order).  Carter timely filed the instant Motion in June 2013.  Mot. to Vac.

## II.     LEGAL STANDARDS

### A.     Section 2255 Petition

"Because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack."  Ciak v. United States, 59 F.3d 296, 301 (2d Cir.1995), abrogated on other grounds by Mickens v. Taylor, 535 U.S. 162 (2002).  "[C]ollateral attack on a final judgment in a criminal case is generally available under [section] 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice."  Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (citation and internal quotation marks omitted).

In a section 2255 motion, the burden is on the petitioner to prove by a preponderance of the evidence his entitlement to relief.  See Napoli v. United States, 45 F.3d 680, 683 (2d Cir. 1995); Gotti v. United States, 622 F. Supp. 2d 87, 91 (S.D.N.Y. 2009).  However, the general rule that a court must construe pro se litigants' pleadings liberally "to raise the strongest arguments that they suggest" applies equally in the context of section 2255 motions.  Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001).

In deciding a section 2255 motion, the court must hold a hearing, "unless the motion and the files and records of the case conclusively show that the prisoner is

4

entitled to no relief." 28 U.S.C. § 2255(b). However, a petitioner is not automatically entitled to a hearing, and no hearing is required where a petitioner's "allegations are 'vague, conclusory, or palpably incredible.'" Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013) (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)); see also United States v. Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987) ("Airy generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing."). "The procedure for determining whether a hearing is necessary is in part analogous to, but in part different from, a summary judgment proceeding." Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." Gonzalez, 722 F.3d at 131. For ineffective assistance of counsel claims, the threshold evaluation in determining the necessity for a hearing is whether the petitioner's claim is "plausible," not whether that claim "will necessarily succeed." Puglisi, 586 F.3d at 213.

    B.    <u>Ineffective Assistance of Counsel</u>

Ineffective assistance of counsel is "[o]ne claim that may appropriately be raised for the first time in a [section] 2255 motion, 'whether or not the petitioner could have raised the claim on direct appeal.'" Harrington v. United States, 689 F.3d 124, 129 (2d Cir. 2012) (quoting Massaro v. United States, 538 U.S. 500, 504 (2003)). A petitioner claiming ineffective assistance of counsel "must show that (1) counsel's performance was objectively deficient, and (2) petitioner was actually prejudiced as a result." Id. (citing Strickland v. Washington, 466 U.S. 668, 687-88 (1984)).

The Second Circuit has described the burden as "a heavy one because, at the first step of analysis, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. (citations and internal quotation marks omitted). "The determinative question at this step is not whether counsel 'deviated from best practices or most common custom,' but whether his 'representation amounted to incompetence under prevailing professional norms.'" Id. at 129-30 (quoting Harrington v. Richter, 131 S.Ct. 770, 788 (2011)). The standard for evaluating the adequacy of counsel's representation is "a most deferential one," Harrington v. Richter, 562 U.S. 86, 105 (2011), since "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," Strickland, 466 U.S. at 690; United States v. Thomas, 2015 WL 2054429, at *1 (2d Cir. May 5, 2015) (summary order).

To show the requisite prejudice, at the second step, a petitioner must show "a reasonable probability that his reliance on counsel's ineffective assistance affected the outcome of the proceedings." Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

### III. PENDING MOTIONS

Before addressing the merits of Carter's petition, the court must address several pending motions relevant to the record before it. As previously stated, on July 11, 2013, Carter filed a motion to amend his petition to include a claim under Alleyne, which was decided ten days after he filed his original petition. Carter's Motion to Amend (Doc. No. 3) is **GRANTED**. The government has already responded to this claim in its

6

Response (Doc. No. 6).  Carter also filed a motion for default judgment on September 9, 2013.  Carter's Motion for Default Judgment (Doc. No. 4) is **TERMINATED AS MOOT** in light of the government having filed its response.  The government's Motion for Extension of Time (Doc. No. 5) is **GRANTED NUNC PRO TUNC**.

In his section 2255 Motion, Carter also requests that the court appoint counsel to represent him in connection with his habeas corpus proceeding.  Mot. to Vac. at 16.  There is no constitutional right to counsel in a habeas proceeding.  Green v. Abrams, 984 F.2d 41, 47 (2d Cir. 1993).  A court may, in its discretion, appoint counsel where "the interests of justice so require."  18 U.S.C. § 3006A(a)(2)(B).  To determine whether the interests of justice require the appointment of counsel, the factors considered by the court include "the petitioner's likelihood of success on the merits; the complexity of the legal issues raised by the petition; and the petitioner's ability to investigate and present the case."  United States v. Brown, 2014 WL 3738062, at *6 (D. Conn. July 30, 2014) (citing Hodge v. Police Officers, 802 F.2d 58, 61–62 (2d Cir.1986)).  Having considered these factors and having determined that Carter's Petition is without merit, as set forth below, the court declines to appoint counsel.

**IV.   DISCUSSION**

   A.   Ineffective Assistance of Counsel

Carter was represented by Attorney Michael G. Dolan in connection with his 2011 resentencing.  Carter alleges four failures by Attorney Dolan on resentencing: 1) that he failed to challenge the offense level calculated in the presentence report; 2) that he failed to challenge the restitution order; 3) that he failed to challenge the court's sentence as procedurally unreasonable; and 4) that he failed to challenge the inclusion

of Carter's 1994 conviction for possession with intent to sell narcotics in the calculation of Carter's criminal history.

        1.        Failure to Challenge Offense Level

The PSR addendum prepared in connection with Carter's resentencing found that the actual loss resulting from Carter's offense was $241,732. United States v. Carter, No. 3:04-CR-00174-EBB, Second Addendum to the Presentence Report (Doc. No. 99) ("PSR Addend.") ¶ 28. As a result, he received a two level increase pursuant to U.S.S.G. § 2B3.1(b)(7)(C) (2010) for a loss exceeding $50,000. Id. In addition, at his original sentencing, Carter was ordered to pay restitution in a total amount of $241,732.00. This portion of the judgment was not altered at Carter's 2011 resentencing. Amd. Judg. The loss and restitution amount both account for losses to three victims: $25,490 to Harstan's Jewelry, $216,042 to Harstan's insurer, Jeweler's Mutual Insurance, and $200 to Jean Zell. Carter argues that these findings were not supported on the record by a preponderance of the evidence and that, in calculating his offense level, the court should only have considered the actual loss to Harstan's Jewelry; namely, $25,490. Mot. to Vac. at 4-5. This would have resulted in a one point instead of a two point increase under U.S.S.G. § 2B3.1(b)(7) (2010).

Carter's argument that the actual loss used to calculate his offense level should only have included the $25,490 in restitution ordered to victim Harstan's Jewelry is unavailing. Carter himself notes trial testimony from a government investigator that the wholesale value of the stolen items was a little over $245,000. Pet. at 5 n. A. That Harstan's Jewelry was compensated in part for this loss by its insurer would not affect the court's finding of loss, which the guidelines define as "the value of the property taken, damaged, or destroyed." U.S.S.G. § 2B3.1 App. Note 3 (2010). Given the

evidence of record, Carter's counsel's strategic decision not to challenge the loss amount at his resentencing did not render his assistance ineffective.[1]  Further, there is no indication, let alone a reasonable probability, that the failure of Carter's counsel to challenge the loss calculation affected the outcome of the proceedings.[2]

2.  Failure to Challenge Restitution Order

Carter argues that because his offense did not include as an element a "scheme, conspiracy, or pattern of activity," restitution is limited to the offense of conviction, and thus restitution should only have been ordered to Harstan's Jewelry itself.  Pet. at 4.  In his "Traverse" filed in reply to the government's response, Carter also argues that certain stolen items that were recovered and seized by law enforcement officers, namely a Rolex watch and a Waterford crystal clock, should have been deducted from the restitution order as offsets pursuant to 18 U.S.C. § 3663A(b)(1)(B)(ii).  Traverse (Doc. No. 7) at 4-6.

The Second Circuit limits a section 2255 challenge to a restitution order to "circumstances where the restitution order amounts to a severe restraint on liberty." Gonzalez v. United States, 2015 WL 4038552, at *4 (2d Cir. July 2, 2015) (citing Kaminski v. United States, 339 F.3d 84, 87-89 (2d Cir. 2003).  This circumstance "will likely be a rare situation," id., and does not apply to the instant case, where the restitution order limits payments to $200 per month.  See Kaminski, 339 F.3d at 87

---

[1]  The court notes that at Carter's resentencing, his counsel focused primarily on the section 3553(a) sentencing factors, and also on arguing – successfully – that a 2-point enhancement sought by the government under § 2B3.1(b)(4)(B) should not apply.

[2]  In order for Carter's offense level to be reduced, the court would have had to find a loss of $50,000 or less.  There is no evidence in the record to suggest that the value of the property taken, damaged, or destroyed was $50,000 or less.

9

(restitution order limiting monthly payments to the greater of 10% of monthly income or $100 "plainly does not come close" to being a severe restraint on liberty).   Thus, the court lacks subject matter jurisdiction to review this claim.[3]   See Kaminski, 339 F.3d at 85 n.1; Agyeman v. United States, 2007 WL 2410381, at *1 (S.D.N.Y. Aug. 23, 2007).

        3.    Failure to Challenge Sentence as Procedurally Unreasonable

Carter also bases his ineffective assistance claim on his counsel's failure to challenge the sentence as "procedurally unreasonable."   Mot. to Vac. at 8.   Specifically, he argues that the court failed to adequately explain or make findings regarding its loss calculation.   This is unsupported by the record.   The original PSR set forth the actual loss as $241,732.00.   Presentence Report ("PSR") ¶ 102.   The PSR addendum prepared in connection with Carter's resentencing lists the same actual loss and calculated the total offense level of 22.   PSR Addend. ¶ 28.   This calculation was adopted by the court at Carter's resentencing.   United States v. Carter, No. 3:04-CR-00174-EBB, Re-Sentencing Hearing Transcript (Doc. No. 112) ("Re-Sent. Tr.") at 25:19.   However, even accepting Carter's allegation as true, Carter has failed to show any prejudice resulting from this alleged omission, and his counsel's failure to object thereto.

Carter also argues, primarily in his Traverse, that the court did not address Carter's post-sentencing rehabilitation efforts in imposing his sentence, and that his

---

[3] The court also notes that, as to the merits of Carter's claim, the MVRA provides that "[i]f a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation." 18 U.S.C. § 3664(j)(1).   Mutual Insurance Company, the insurer for Harstan's Jewelry, was thus entitled to restitution for the compensation that it paid to Harstan's Jewelry with respect to the actual loss caused by Carter's offense of conviction, and it was appropriately included in the restitution order.

counsel was ineffective in failing to argue that the court did not address the issue. Traverse (Doc. No. 7) at 2-4. The transcript from Carter's resentencing makes clear that Attorney Dolan addressed Carter's post-sentencing conduct extensively, e.g., Re-Sent. Tr. 3:22-6:15, and that the court took note of such conduct, id. at 24:5-25, 25:22-23. Carter's argument appears to be that the court did not put on the record the weight it gave to that conduct in sentencing, and thus that it committed procedural error by "failing to adequately explain its chosen sentence." Traverse at 3. However, in imposing sentence, the court, after calculating the guidelines and rejecting the government's request for a guidelines enhancement, set forth on the record its considerations of the sentencing factors.[4] Re-Sent. Tr. 24:2-26:4. It then imposed a guidelines sentence. Id. at 26:10-18. There is no evidence that Attorney Dolan's failure to request that the court elaborate further on its reasons for the sentence "amounted to incompetence under prevailing professional norms," Harrington, 689 F.3d at 129-30, nor that any prejudice to Carter occurred as a result. Thus, Carter has not shown ineffective assistance of counsel on this basis.[5]

    4.    Failure to Challenge Criminal History Calculation

Finally, Carter argues that his counsel was ineffective in failing to challenge the

---

[4] In particular, the court stated that it considered the offense to be serious, pointing to testimony from the victims on the effect the offense had on them. Tr. 25:1-17. The court also took into consideration Carter's personal characteristics, specific deterrence, and general deterrence, noting that it believed Carter could be deterred. Tr. 25:21-26:4.

[5] Carter also contends that his counsel failed to seek a sentence at the low end of the guidelines on re-sentencing, based on the fact that his sentence was at the low end of his guidelines at the first sentencing. As noted by the government, Carter's sentence was reduced substantially at re-sentencing, from an effective sentence of 360 months to 189 months. Carter's argument is also unsupported by the record, which indicates that Attorney Dolan sought a below-guidelines sentence of seven years and one day. United States v. Carter, No. 3:04-CR-00174-EBB, Defendant's Memorandum in Aid of Sentencing (Doc. No. 102) at 11.

inclusion of a 1993 drug conviction in his criminal history calculation, which resulted in Carter being in criminal history category VI instead of criminal history category V.[6]

A defendant may not collaterally attack prior state court felony convictions during a federal sentencing hearing, unless the defendant was denied the right to counsel, as articulated in Gideon v. Wainwright, 372 U.S. 335 (1963), in the state court proceedings.  See United States v. Jones, 27 F.3d 50, 52 (2d Cir. 1994) (citing United States v. Custis, 511 U.S. 485 (1994)); United States v. Claudillo-Marquez, 165 F. App'x 43, 46 (2d Cir. 2006) (summary order).  Carter argues that the underlying state court conviction violated his Sixth Amendment right to counsel, based on the fact that Carter's state court counsel also represented Sarah Carter, Carter's wife and co-defendant in the offense.  Pet. at 12.  Carter argues that this was an "actual conflict of interest," and thus that he was effectively deprived of the right to counsel. Id.

"In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance."  Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). The fact of dual representation alone does not establish an actual conflict.  Id. Rather, to show an actual conflict, a defendant must demonstrate that "during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action."  United States v.

---

[6] The challenged conviction resulted in Carter receiving 3 criminal history points for a total of 13, which placed him in criminal history category VI.  A total of 10 criminal history points would have placed Carter in criminal history category V.

Schwarz, 283 F.3d 76, 91 (2d Cir. 2002) (internal quotation marks and citation available).   Carter has not demonstrated such a conflict.   Both Carter and Sarah Carter pled guilty to the offense, and there no indication that their interests diverged at this point.[7]   See United States v. Allen, 48 F. App'x 807, 808 (2d Cir. 2002) (summary order).   Further, there is no evidence that the alleged conflict caused a lapse in his attorney's representation.

Based on the lack of evidence that Carter could have successfully challenged his state conviction as violating his Sixth Amendment right to counsel, his counsel's failure to raise this argument at Carter's federal resentencing did not render his counsel's performance "objectively deficient."   Additionally, there is no evidence that Carter was actually prejudiced as a result.   Thus, Carter has not met the standard under Strickland for showing ineffective assistance of counsel.

      B.      Whether Carter's Sentence Violates *Alleyne v. United States*

Carter also argues that the enhancement of his sentence based on the court's loss calculation violated the Supreme Court's decision in Alleyne v. United States, 133 S. Ct. 2151 (2013).   In Alleyne, the Court held that any fact other than the fact of a prior conviction that increases a mandatory minimum sentence "is an 'element' that must be submitted to the jury and found beyond a reasonable doubt."   Id. at 2155.

---

[7] Carter appears to argue that his guilty plea was "part of a 'package deal,' . . . the key point of the deal was that Sarah Carter would avoid any incarceration through a suspended sentence . . .[Carter's] own plea was dependent upon such a recommendation, and . . . the pleas and counsel's joint representation, [were] to [Carter's] unknowing disadvantage."   Pet. at 12.   However, the transcripts of Carter's plea indicate that Carter's plea was knowing and voluntary, and he stated at the time that he was satisfied with his attorney.   Mot. to Vac., Exh. A at Tr. 3:26-5:23.

The court first notes that Carter's description of the sentencing court's findings is incorrect. While he alleges that the court found a loss of over $250,000, in fact the court found a loss of $50,000 or greater but less than $250,000.[8]  PSR Addend. ¶ 28; Re-Sent. Tr. 25:19 (finding offense level of 22).  Thus, his argument that the enhancement was inconsistent with the record or outside the scope of the Indictment is moot.  See Mot. to Amend at 3.  Second, as noted by the government, Alleyne did not overrule United States v. Booker, 543 U.S. 220 (2005), which held that a sentencing court may make factual findings that increase a defendant's Sentencing Guidelines, so long as the Guidelines are treated as advisory.  Thus, Carter's sentence did not violate Alleyne.

C. Hearing

While Carter need not prove his claim in order to receive an evidentiary hearing, he must plead a "plausible" claim.  See Puglisi, 586 F.3d at 2013.  As discussed in the preceding sections, Carter has not plausibly pled deficient performance or prejudice by Attorney Dolan, or that he is entitled to relief under Alleyne.  Moreover, his Petition sets forth no "specific facts supported by competent evidence" that, if proven at a hearing, would entitle him to relief.  See Gonzalez, 722 F.3d at 131.  Thus, an evidentiary hearing is not required to decide this Petition.

---

[8] Had the court found a loss of over $250,000, it would have applied an offense level of 23 rather than 22, resulting from a base offense level of 20 under U.S.S.G. § 2B3.1(a) and a 3-level enhancement under § 2B3.1(b)(7)(D).

IV.     CONCLUSION

For the reasons set forth above, the court **DENIES** Carter's Motion to Vacate, Set Aside, Or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. No. 1).  Carter's Motion to Amend (Doc. No. 3) is **GRANTED**.  Carter's Motion for Default Judgment (Doc. No. 4) is **TERMINATED AS MOOT**.  The government's Motion for Extension of Time (Doc. No. 5) is **GRANTED NUNC PRO TUNC**.  In light of the court's ruling on the underlying motion, Carter's Motion for Bond Pending Resolution of 2255 (Doc. No. 8) is **TERMINATED AS MOOT**.

Because Carter has not made a "substantial showing" of denial of a constitutional right, a certificate of appealability will not issue.  28 U.S.C. § 2253(c)(2).  The Clerk is hereby directed to close this case.

**SO ORDERED.**

Dated this 13th day of July, 2015 at New Haven, Connecticut.

   /s/ Janet C. Hall
Janet C. Hall
United States District Judge